The STATE of Ohio, Appellee,

v.

SMITH, Appellant.

[Cite as *State v. Smith*, 148 Ohio App.3d 274, 2002-Ohio-3114.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 79936.

Decided June 20, 2002.

William D. Mason, Cuyahoga County Prosecuting Attorney, and Jon W. Oebker, Assistant County Prosecuting Attorney, for appellee.

Joseph Vincent Pagano, for appellant.

---

MICHAEL J. CORRIGAN, Judge.

{¶ 1} A jury found defendant Carlos Smith guilty of preparing drugs for sale and possession of drugs, after hearing testimony from two police officers who saw

the defendant pass a plastic bag containing crack cocaine to another man, Clarence Jones. Jones had been indicted with the defendant, and they were scheduled to be tried together. After strongly insisting that he had nothing to do with the drugs found, Jones decided to plead guilty just after the jury had been sworn but before any testimony had been taken. Because Jones had been present throughout voir dire, the court noted Jones's absence to the jury and told it that Jones had pleaded guilty and was no longer a part of the case. In this appeal, the defendant raises several issues relating to the court's comment that Jones pleaded guilty, as well as the state's decision to comment on Jones's absence from trial.

{¶ 2} It is a long-standing rule that information that a co-defendant has pleaded guilty to or has been convicted of an offense stemming from the same facts or circumstances forming the basis of a prosecution against another is inadmissible as proof against the other. See *Kazer v. Ohio* (1831), 5 Ohio 280, 281–282, 1831 WL 97. This is because evidence that another pleaded guilty to or was convicted of an offense stemming from the same facts or circumstances is not necessarily evidence that the other committed the same offense. In *United States v. Gambino* (C.A.3, 1991), 926 F.2d 1355, 1363, the Third Circuit Court of Appeals quoted *Bisaccia v. New Jersey Atty. Gen.* (C.A.3, 1980), 623 F.2d 307, 312, and *United States v. Toner* (C.A.3, 1949), 173 F.2d 140, 142, and stated:

{¶ 3} " 'There are strong considerations against using a co-conspirator's guilt as substantive evidence of another defendant's guilt. "The foundation of [this] policy is the right of every defendant to stand or fall with the proof of the charge made against him, not against somebody else * * *. The defendant has a right to have his guilt or innocence determined by the evidence presented against him, not by what has happened with regard to a criminal prosecution against someone else." ' "

{¶ 4} This is not to say that evidence of a co-defendant's guilty plea is never admissible. In some circumstances, evidence of a co-defendant's guilty plea may go to the jury if its use is limited to other purposes such as impeachment, see, e.g., *United States v. King* (C.A.5, 1974), 505 F.2d 602, or to show that the state has nothing to hide in its plea agreements. See, e.g., *United States v. Hilton* (C.A.11, 1985), 772 F.2d 783, 787. See, generally, Carlson, Evidentiary Issues in Criminal Cases: Admissibility of Plea Agreements on Direct Examination—Are There Any Limits? (2001), U.Miami L.Rev. 707, 712–715. The test most often used to determine the admissibility of a co-defendant's guilty plea was set forth in *United States v. Casto* (C.A.5, 1989), 889 F.2d 562, 567, and requires the court to consider (1) whether a limiting instruction was given, (2) whether there was a proper purpose in introducing the fact of the guilty plea, (3) whether the plea was

improperly emphasized or used as substantive evidence of guilt, and (4) whether the introduction of the plea was invited by defense counsel.

{¶ 5} After co-defendant Jones pleaded guilty, the court went on the record with counsel outside the jury's hearing. The court noted that "[w]e have to explain the absence of the other guy [Jones]. I will say he pled guilty." Defense counsel responded, "I'm going to talk about it in opening." The court brought the jury back in and said:

{¶ 6} "Initially, I can tell that you have all observed that Mr. Kelly and his client, Mr. Jones, are no longer present in the Courtroom. This is because Mr. Jones decided to enter a plea of guilty, as offered to him by the State of Ohio over the luncheon recess.

{¶ 7} "As we go through this trial, you will hear further instructions from the Court on how to treat that fact, as it relates to any other issues which you will be called upon to decide, but at this time that is all you really need to know and that is all I am going to instruct you on at this time.

{¶ 8} "We will continue with the trial to determine the guilt or innocence of the remaining Defendant."

{¶ 9} In its opening statement to the jury, the state told the jury:

{¶ 10} "Now, as the Judge has told you, Mr. Jones pled guilty just before you came out here today, this afternoon. He pled guilty to Possession of Drugs, the felony of the fourth degree that he was indicted for. That does not relieve this Defendant of responsibility in this case. He still faces the two charges, the Preparation of Drugs for Sale and the Possession of Drugs.

{¶ 11} "* * *

{¶ 12} "* * * The fact that one Defendant has pled guilty does not negate this case, does not relieve this Defendant of responsibility."

{¶ 13} Defense counsel likewise mentioned Jones's guilty plea and established the defense theory that Jones alone was responsible for any drug activity that occurred at the time of arrest:

{¶ 14} "Very briefly, folks, I think what the evidence is going to show you in this case is that Mr. Jones, as the Prosecutor just pointed out to you, just pled guilty to the drugs. He has finally admitted today that the drugs were his. He told the Judge that and he has admitted to the crime.

{¶ 15} "MR. FISHER: Objection, your honor.

{¶ 16} "MR. GREENE: I believe the evidence is going to show you that.

{¶ 17} "THE COURT: Sustained.

{¶ 18} "MR. GREENE: My client, as I talked to you about in voir dire, steadfastly denies, as he stands before you, that he had the drugs or had anything to do with the drugs. * * * I think that you will see that my client did not have anything to do with the cocaine that Mr. Jones had on him, that he has admitted to, and that should be the end of the case."

{¶ 19} In the interval between the close of the state's case-in-chief and the defendant's case, the defense informed the court that it intended to call Jones as a defense witness. The court noted that it would contact Jones's attorney because "[h]e's going to be incriminating himself." When defense counsel said that Jones had already incriminated himself, the court disagreed, saying:

{¶ 20} "Well, he hasn't really yet, Mr. Greene. You know, he stood up in this Court this morning and told me they weren't his drugs and he did not want to plead. Then he enters a plea, which many people do when they are not guilty, because of the risk of exposure. * * * Now from his presence, I assume what you are telling me is he was taking the plea and it's all his and that he has nothing to do with this other co-defendant. * * * Otherwise, he would have no reason to stand up here. He would be incriminating himself, in front of me, because I'm the sentencing Judge. * * * Because he's now flip-flopped around three different times. I think he needs an attorney to discuss this with him."

{¶ 21} The court recessed to give defense counsel a chance to call Jones's attorney. When the court reconvened, it asked defense counsel how many witnesses the defense would present. Counsel replied, "just one" and proceeded to present the defendant as the sole defense witness.

{¶ 22} After trial, the defendant obtained new counsel and filed a motion for a new trial on grounds that trial counsel performed ineffectively by failing to subpoena Jones as a witness. The court denied the motion. Appended to the motion was this affidavit by Jones:

{¶ 23} "To whom it concern the drugs that was found was not Carlos Smith he did not know about them he is not guilty of having any drugs only me and I plead[ed] guilty already the case should be dismissed my lawyer would not let me testify at Carlos trial. [Sic.]"

{¶ 24} The defendant first argues that the court erred by failing to instruct the jury that evidence of Jones's guilty plea could not be considered as substantive evidence of the defendant's guilt.

{¶ 25} There is a consensus that the court should make a limiting instruction to the jury when notifying the jury that a co-defendant has pleaded guilty and is no longer part of the case. *United States v. Baez* (C.A.10, 1983), 703 F:2d 453, 455 ("[C]autionary instructions limiting the jury's use of the plea to permissible purposes are critical."). However, there is no clear consensus as to what kind of

instruction the court should give. In *United States v. Halbert* (C.A.9, 1981), 640 F.2d 1000, 1006–1007, the court found inadequate an instruction telling the jury that the disposition of two co-defendants' cases prior to trial "should not control or influence you in your verdict with reference to the remaining defendant, Mr. Halbert. You must base your verdict as to him solely on the evidence presented to you in this courtroom." Id. at 1006.

{¶ 26} At the other end of the spectrum is *United States v. Johnson* (C.A.7, 1994), 26 F.3d 669, 676, in which the court noted that the following instruction adequately protected a defendant from a mention that several co-defendants had pleaded guilty:

{¶ 27} " 'What the attorneys have said during the course of the trial and what they will say in their arguments to you, those statements are not evidence and may not be considered by the jury as evidence * * *. It is what the witnesses have said that's the evidence in this case * * *. But what the attorneys say is not evidence.' "

{¶ 28} We do not have to choose in this case between these competing standards, for we must review the defendant's arguments for plain error as he did not object in any way whatsoever. Moreover, as pointed out by the state, the defendant not only did not object at a time when the court gave the opportunity to do so, but he told the court that he intended to use Jones's guilty plea as substantive evidence of his own innocence.

{¶ 29} Plain error results from an error of omission. It arises in circumstances where a party has failed to call an error to the court's attention at a time at which the error could be corrected, the error itself is obvious, and the error clearly affected the outcome of the trial. *State v. Nicholas* (1993), 66 Ohio St.3d 431, 436, 613 N.E.2d 225.

{¶ 30} Our review of the applicable legal standards governing our review would not be complete unless we mentioned the invited error doctrine. Unlike plain error, "invited error" is error of commission. The Ohio Supreme Court has held that invited error arises when a party tries to take advantage of an error that the party induced the trial court to make. *State ex rel. The V Cos. v. Marshall* (1998), 81 Ohio St.3d 467, 471, 692 N.E.2d 198. The invited error doctrine is applied when defense counsel is "actively responsible" for the trial court's error. *State v. Campbell* (2000), 90 Ohio St.3d 320, 324, 738 N.E.2d 1178.

{¶ 31} In *United States v. King* (C.A.5, 1974), 505 F.2d 602, 607, the court made the following assessment of reviewing cases like this where a defendant failed to object to a mention that a co-defendant had pleaded guilty prior to trial:

{¶ 32} "In assessing King's assertion of plain error in this case, then, we must carefully examine all the facts and circumstances of the case in their proper

context. The presence or absence of an instruction is an important factor, but it is also essential to consider other factors, such as whether there was a proper purpose in introducing the fact of the guilty plea, whether the plea was improperly emphasized or used as substantive evidence of guilt, whether the introduction of the plea was invited by defense counsel, whether an objection was entered or an instruction requested, whether the defendant's failure to object to the testimony could have been the result of tactical considerations, and whether, in light of all the evidence, the failure to give an instruction was harmless beyond a reasonable doubt."

{¶ 33} The record shows that the court and counsel conferred on how to inform the jury that Jones was no longer a part of the case. The court said that it would have to explain Jones's absence and would do so by telling the jury that he pleaded guilty. Defense counsel then replied, "I'm going to talk about it in opening." And talk about he did. Defense counsel laid out the strategy of using Jones's guilty plea as substantive proof in his opening statement by telling the jury that Jones had pleaded guilty and "he has finally admitted today that the drugs were his." Defense counsel went on to say that defendant did not have anything to do with the drugs and that Jones's guilty plea "should be the end of the case."

{¶ 34} So the defendant not only failed to object at a time when the court asked for some input on how to inform the jury about Jones's absence from trial, he gave the court and counsel for the state every reason to think that he would affirmatively use Jones's conviction as substantive proof of his own innocence. In fact, the defendant told the court that he would be calling Jones as witness. Had Jones been called as a witness, the circumstances of his guilty plea no doubt would have laid before the jury. This would have been completely permissible. See *United States v. Mealy* (C.A.7, 1988), 851 F.2d 890, 899.

{¶ 35} As it turned out, Jones did not testify, and the defendant now claims that the court's involvement in that decision somehow violated his Sixth Amendment right to confrontation. We disagree, for the record does not suggest to us that the court barred Jones's testimony. In fact, the court had no objection in principle to Jones's testimony, subject only to giving Jones's attorney notice that Jones would be called as a witness. The court correctly acted to preserve Jones's right against self-incrimination, pointing out that while Jones had pleaded guilty, he had yet to be sentenced. Because Jones had initially maintained his innocence during the plea negotiations, the court was concerned that Jones might incriminate himself for sentencing purposes were he to take the witness stand and completely exculpate the defendant—hence, its insistence that Jones's attorney be notified.

{¶ 36} We agree with the state that nothing in the record suggests that the court's act of ensuring a witness's constitutional rights should be viewed as impeding the defense. If the defendant truly believed that Jones could assist his case, he had the right to subpoena Jones and force him to invoke his right against self-incrimination in front of the jury. See *Columbus v. Cooper* (1990), 49 Ohio St.3d 42, 550 N.E.2d 937, paragraph one of the syllabus. Such a scenario might have been very helpful to the defendant, as Jones's silence in light of questions about his guilty plea might have reflected well on Jones.

{¶ 37} By making a strategic decision to comment on Jones's guilty plea, indeed using that guilty plea as substantive evidence of his own innocence, the defendant cannot be heard to complain that the court erred by failing to inform the jury that Jones's guilty plea could not be used as substantive evidence of the defendant's guilt. He not only failed to object to the court's comment, but he actively prompted that comment by adopting a strategy that would use Jones's guilty plea to his own advantage. The defendant cannot have it both ways. We therefore find that the court did not err in any respect. The assignments of error are overruled.

Judgment affirmed.

JAMES D. SWEENEY, P.J., concurs.

DIANE KARPINSKI, J., concurs separately.

KARPINSKI, Judge, concurring.

{¶ 38} I concur with the majority; however, I write to emphasize that the trial court should be giving a limiting instruction in the circumstance here. Moreover, we should offer a model. As Judge Brogan observed in a similar case from the Second District:

{¶ 39} "The jury should be instructed as to the 'limited' purpose for which they may consider the evidence that the witness has pleaded guilty to a crime which arose out of the same events for which defendant is on trial. See Model Jury Instruction, Eighth Circuit (1993), Sec. 2.19. The admission of such evidence without a limiting instruction is not reversible error if defense counsel does not request an instruction and if the evidence was introduced for a proper purpose." *State v. Clark* (May 4, 1994), Montgomery App. No. 13435, at * 26–27, 1994 WL 171223, following *Gerberding v. United States* (C.A.8, 1973), 471 F.2d 55.

{¶ 40} The model jury instruction of the Eighth Circuit states as follows:

{¶ 41} "You have heard evidence that witness (name) has pleaded guilty to a crime which arose out of the same events for which the defendant is on trial here.

You must not consider that guilty pleas as any evidence of this defendant's guilt. You may consider that witness's guilty plea only for the purpose of determining how much, if at all, to rely upon that witness's testimony."

{¶ 42} The Committee Comments following this instruction provide an explanation:

{¶ 43} "Evidence that a codefendant has pleaded guilty may not be used as substantive proof of a defendant's guilt. However, such evidence is admissible to impeach, to show the witness's acknowledgment of participation in the offense, or to reflect on his credibility. In such circumstance the jury should be instructed that the evidence is received for one or more of these purposes alone, and that the jurors are not to infer the guilt of the defendant. *United States v. Roth*, 736 F.2d 1222, 1226 (8th Cir.) Cert. Denied. 469 U.S. 1058 [105 S.Ct. 541, 83 L.Ed.2d 429] (1984). See also *Gerberding v. United States*, 471 F.2d 55, 60 (8th Cir. 1973); *United States v. Wiesle*, 542 F.2d 61, 62–63 (8th [3rd] Cir. 1976); *Wallace v. Lockhart*, 701 F.2d 710 [719], 725–26 (8th Cir.), cert. Denied, 464 U.S. 934 [104 S.Ct. 340, 78 L.Ed.2d 308] (1983)."

{¶ 44} The model jury instruction and comments from the Eighth Circuit offer a useful example for the trial court.